CASE 54.—ACTION BY DANIEL S. MANGAN'S, ADM'R, AGAINST THE LOUISVILLE ELECTRIC LIGHT CO. FOR CAUSING THE DEATH OF PLAINTIFFS INTESTATE.—March 27.

## Mangan's Admr. v. Louisville Electric Light Co.

Appeal from Jefferson Circuit Court, Common Pleas Branch (First Division).

EMMETT FIELD, Judge.

Judgment for defendant. Plaintiff appeals. Reversed.

1. Electricity—Manufacturers—Care to protect others from danger —Electricity is a powerful and deadly agency, and the rule has been adopted that those who manufacture and use it must exercise the utmost care to protect others from the danger; and in handling so dangerous an agency, care proportionate to· the danger, must be observed, and to this end nothing short of the utmost care is sufficient.

2. Utmost ·care—Meaning—By utmost care and skill in handling electricity is meant the highest degree of care and skill known, which may be used under the same or similar circumstances.

3. Employees—Absence of Notice—Right to Assume that Appliances ʼare Safe—Where one is employed in shops where electricity is being used he has a right to assume, in the absence of notice to the contrary, that the transformer and other appliances for furnishing it are in good order and free from defects.

O'NEAL & O'NEAL. FORCHT & FIELD and R. L. GREENE for appellee.

(No brief in the record for appellee).

MATT O'DOHERTY for appellant.

## POINTS AND AUTHORITIES.

1. A company which creates and places upon its wires an electric current of a voltage dangerous to human life, must see to it, at its peril, that the dangerous current does not escape therefrom into the houses, shops, or other private premises of its patrons. (McLaughlin v. L. E. L. Co., 100 Ky. 73; Overall v. L. E. L. Co., 20 Ky. Law Rep. 759; Ryland v. Fletcher, L. R. 3, H. L. 330; Ball v. Nye, 99 Mass. 582; Shiply v. Fifty Associates, 101 Mass. 251; Gorham v. Gross, 125 Mass. 232; Wilson v. New Bedford, 108 Mass. 261; Cahill v. Eastman, 18 Minn. 324; St. Anthony Falls Water Co. v. Eastman, 20 Minn. 277; Prixley v. Clark, 35 N. Y. 520; Zutte v. Hughes, 67 N. Y. 267; Selden v. Canal Co., 29 N. Y. 634; Bradley v. N. Y., etc., R. R. Co., 21 Conn. 294; Jaggard on Torts, page 853; Berger v. Minn. Gas L. Co., 62 N. W. 336; Kinnaird v. Standard Oil Co., 89 Ky. 476; The F. A. Sneider Preserve Co. v. Beeman, 22 Ky. Law Rep. 1527; Macon v. Paducah R'y Co., 23 Ky. Law Rep. 50; O'Donnell's Adm'r v. L. E. L. Co., 21 Ky. Law Rep. 1362).

2. Justice and public policy alike demand that the risk arising out of any defect or imperfection in appliances provided by an electric light company for reducing the voltage of the electric current, as it passes from the primary wires of the company to the service wires of the consumer, must fall upon the company which provides, and whose duty it is to keep such appliances in proper condition, rather than upon the consumer, who has no connection with such apliances or control over them.

3. The appellee in this case having impliedly agreed to transmit to the service wires of the L. & N. R. R. Co., in the shop where plaintiff's intestate was employed, electricity for lighting purposes at a low and harmless voltage not perilous to human life, and having provided a transformer which it represented was to accomplish that result, can not be excused from liability for the tort growing out of its breach of contract merely because the appliance provided by it proved defective or inadequate. Appellee having created the danger must control it; its contract but adds to its obligation. (Jaggard on Torts, page 95; Ryland v. Fletcher; Overall v. L. E. L. Co., and cases supra).

4. The obligation of an electric light company, or other manufacturer and vendor of electricity for private profit, to confine to its wires, and at its peril, any dangerous current it may create, is all the more just and reasonable in view of the well-known scientific fact that, except as a measure of economy, there is no excuse or necessity whatever for such company creating an electric current of voltage dangerous to human life.

It could have no right to create a current which it could not absolutely control.

5. The court erred in requiring any proof of negligence in this case; the obligation of the appellee was that of insurer. (Overall v.'L. E. L. Co., 20 R. 759, and cases supra).

6. If proof of negligence on the part of the appellee or its agent was ˙ necessary to fix its liability, conclusive proof of such negligence was produced at the trial. The evidence is conclusive, (1) that the transformer was broken down, (2) that lightning striking a transformer is capable of breaking down its insulation, (3) that lightning did strike the transformer .in question twice within a few weeks prior to the death of plaintiff's intestate, (4) that the fact was known to the defendant's agents, (5) that with knowledge that the transformer had been struck by lightning they made no examination or test with a view of learning whether the lightning strokes had brought about the condition which they knew it was capable of producing and must, if produced, entail deadly peril on the men employed in the L. & N. R. R. shop.

7. The defendant was criminally negligent in failing to give its employees, the trouble crew, the instruction necessary to enable them either to discover the defect in the transformer or even to suspect its presence. It is not conceivable what facts would conclusively establish the negligence of the defendant, if those recited above do not..

8. The instructions which required the jury before finding against the defendant to find, not that it had merely failed to exercise the utmost care, but that it had negligently failed to exercise the utmost care made something more than a mere failure to exercise the utmost care necessary. These instructions were confusing and misleading in any view that may be taken of the law as to the obligation of the defendant to control the danger which it creates.

9. There was no evidence in the case to warrant the submission to the jury of the issue as to the alleged contributory negligence of the deceased.

10. The court erred in refusing to instruct the jury that a mere failure on the part of the deceased to anticipate the negligence or wrongful act or omission of the appellee could not be charged against him as negligence. (Ramsey v. L., C. & L. R. R., 89 Ky. 104; Shearman & Redfield on Neg., Sec. 92).

11. The court erred in refusing to instruct the jury that the negligent or accidental act of a third party concurring with appellee's own wrongful or negligent act in causing the death of plaintiff's intestate could not relieve it of liability. (Shearman &

Redfield on Neg., 5th Ed., Sec. 65; O'Neal v. Orr, 5 Bush, 651; Owings v. Foster, etc., 1 Bibb, 159).

12. The court erred in refusing to allow plaintiff's counsel to interrogate the jurors, as requested, before exercising his right to strike the names of three jurors from the list of eighteen furnished by the clerk. (Law v. Webster, 19 R. 1208; London, etc., Insurance Co. v. Rufer, 89 Ky. 525).

13. The newly discovered evidence in this case entitled plaintiff to a new trial. (Berberich v. Lou. L. B. Co., 20 R. 467; L. & N. R. R. v. Whitley Co., 18 R. 868).

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

This action was brought by the appellant as administrator of the estate of Daniel S. Mangan, deceased, to recover of appellee damages for his death which occurred from contact with an electric current in the machine shop of the Louisville & Nashville Railroad Company in the city of Louisville. Upon the trial in the court below the jury returned a verdict for the appellee, and from the judgment refusing appellant a new trial and dismissing the action this appeal is prosecuted.

The cause of action set out in the petition in brief is that the appellee was under contract to furnish the railroad company electricity for the lighting of its machine shops; that it was its duty to see that the lines leading from its plant and dynamos were properly insulated and protected so as to prevent injury to those in the machine shops; that for this purpose it used a transformer connected with its wires outside of the machine shops; that it was appellee's duty to keep the transformer in proper condition and repair, which it negligently failed to do and by reason of such negligence it got out of repair, and became so defective that if suffered an

unnecessary, unusual, and highly dangerous current
of electricity of not less than 2,000 volts to escape
from appellee's lines to and over the lines of the
railroad company in the machine shops with which
the appellant's intestate, who was an employee of
the latter company, and unacquainted with electric-
ity, in attempting to light a certain lamp or burner
in the machine shops, came in contact and was there-
by killed without fault on his part.    The defense
interposed by appellee is in substance that the trans-
former was in perfect condition, and the intestate's
death was caused by his own contributory negligence
in getting upon a metal stand to turn on the light
in the shops whereby a connection with the ground
was furnished the electricity, and by the fault of a
telephone line repairer in making a ground con-
nection with appellee's lines on the outside at the
same time in repairing a telephone line leading into
the adjacent building of the Mengel Box Company,
and further that these acts of the intestate and
telephone repairer were without appellee's knowl-
edge, and beyond its control. Without consuming time
in discussing the evidence we deem it sufficient to say
that though the contention of each party received
support therefrom, it was quite conflicting, but
unquestionably the case should have gone to the jury
as the court allowed it to do.

The instructions given by the court, so far as
material, are as follows:  "(1) The court instructs
the jury that if they believe from the evidence that
the defendant company negligently failed to exercise
the utmost care and skill which prudent persons are
accustomed to exercise under similar circumstances,
in the management and care of its wires, appliances
and electrical currents, so as to prevent the entry

into the building where plaintiff's intestate was killed of an electrical current that was more dangerous than necessary to reasonably conduct its business of lighting said buildings, and by reason of such negligence, if any there was, the plaintiff's intestate was killed, then the law is for the plaintiff and the jury should so find, unless they shall further blieve from the evidence that the plaintiff's intestate contributed to cause his injury by his own negligence and that he would not have been injured but for his contributory negligence, if any there was.  (2) But unless the defendant negligently failed to exercise the utmost care and skill in the management and care of its wires, appliances, and electrical currents so as to prevent the entry into the building, where plaintiff's intestate was killed, of an electrical current that was more dangerous than necessary to reasonably conduct its business of lighting said building, and the plaintiff's intestate was thereby killed, then the law is for the defendant and they should so find.  *  *  *  (6) By negligence is meant the failure to exercise that degree of care which a person of ordinary prudence usually exercises under like or similar circumstances.  *  *  *  (8) Utmost care, as used in these instructions, means the highest care which careful and prudent persons are accustomed to observe under the same or similar circumstances." It will be observed that by instructions 1 and 2 before the jury could find for the plaintiff they must find that the defendant had negligently failed to exercise the utmost care which prudent persons are accustomed to exercise, and then in the sixth instruction they were told that negligence is the failure to exercise ordinary care.  So,

vol. 122—31.

taking the three instructions together, the jury were in effect told that the defendant was not liable unless it failed to exercise ordinary care to exercise the utmost care and skill which prudent persons are accustomed to exercise under similar circumstances. It will also be observed that, while by the first and second instructions the defendant was required to exercise the utmost care and skill, by the eighth instruction the utmost care was defined as the highest care which careful and prudent persons are accustom to observe under the same or similar circumstances.

This is not the standard of care which this court has laid down. In McLaughlin v. Louisville Electric Light Company, 100 Ky. 173, 18 Ky. Law Rep. 693; 37 S. W. 851, 34 L. R. A. 812, the first case on the subject, the court said: "Electricity is a powerful and subtle force, and its nature and manner of use not well understood by the public, nor is its presence easily determined or ascertained. Its use for private gain is very extensive, and becoming more and more so. The daily avocation of many thousands of necessity bring them near to this subtle force, and it seems clear that the electric companies should be held to the use of the utmost care to avoid injuring those whose business or pleasure requires them to come near such a death-dealing force." In the next case, Overall v. Louisville Electric Light Company, 47 S. W. 442, 20 Ky. Law Rep. 759, the court said: "Appellant at the time he was struck was at a place where his business required him to be, and where he had a right to be and it was the duty of the electric light company to know that linemen of the telephone company would have to come into close proximity to its wires in attending to their duties,

and it was its duty to use every protection which was accessible to insulate its wires at that point and at all points where people have a right to go for business or pleasure, and to use the utmost care to keep them so; and for personal injuries resulting from its failure in that regard it is liable in damages.'' Approving these cases in Schweitzer's Administrator v. Citizens' General Electric Company, 52 S. W. 830, 21 Ky. Law Rep. 608, the court again said: ''It was the duty of appellee to use the highest degree of care to keep the lines and appliances in a safe condition, and take care that repairs be made when needed.'' The question was again before the court in Thomas' Administrator v. Maysville Gas Company, 108 Ky. 224, 21 Ky. Law Rep. 1690; 56 S. W. 153, 53 L. R. A. 147, where the court, after quoting from the previous opinions, said: ''From this it will be seen that the court is of the opinion that electric companies should use the utmost care to avoid injuring persons who may be brought in contact with wires charged with electricity.'' In Macon v. Paducah Street Railway Company, 110 Ky. 680, 23 Ky. Law Rep. 46; 62 S. W. 496, the court said: ''The definition of ordinary care given in said instruction No. 1 is erroneous in this case for the reason that it has been repeatedly held by this court that persons using electricity either for lighting or for propelling cars, or other business, must exercise the highest degree of care for the protection of all persons in all places where such persons have a right to be.''

It is insisted for the appellant that the court should have instructed the jury that the defendant was bound to maintain perfect insulation and was responsible at all events if it failed to do so. Such a rule was in substance announced in Rylands v.

Fletcher, 3 H. L. 330, but that case has not been fol lowed in the later cases in England or America the modern rule being that the manufacture and sale of a useful article being a legal act the manufacturer in supplying it to his customers is bound only to exercise such care and skill as the dangerous character of the thing and the attending circumstances demand. Triple State Natural Gas & Oil Company v. Wellman, 114 Ky. 79, 24 Ky. Law Rep. 851, 70 S. W. 49. Electricity is a powerful and deadly agency. It cannot be seen, and is as silent as it is deadly. It gives no warning of its presence. So the rule has been adopted that those who manufacture and use it must exercise the utmost care to protect others from the danger. They are not insurers, for the manufacture and sale of electricity is lawful, but in handling so dangerous an agency, care proportionate to the danger must be observed, and to this end nothing short of the utmost care is sufficient. While in some of the cases referred to expressions are used in argument which might seem to apply the rule laid down in Rylands v. Fletcher, still in all the cases when the court came to state its conclusion it stated the rule as above quoted. Where the injury occurs to a traveler on a public highway or to a person in a public place where the public have a right to be, the burden is shifted. The rule in such cases is thus stated in Owensboro v. Knox's Administrator, 116 Ky. 451, 25 Ky. Law Rep. 680, 76 S. W. 191: ''When the circumtances of the injury show that a 'live wire'—one charged with a deadly current of electricity—has been allowed to be at a place where the public have a right to be and are, without reason to suspect the dangerous condition of the wire, a prima

facie case of negligence will have been established. In such a state of case the risk of assuming that the wires and other appliances are in a safe condition is not that of the public, but of the operator of the plant. The operator has the better means of knowing. It is his duty both to provide such appliances as are reasonably safe, and by proper inspection and oversight to keep himself informed as to whether they are safe. Until the public has knowledge or notice to the contrary, they may assume that the operator has properly discharged his duties in these respects." The case of Lexington Railway Company v. Fain's Administrator, 71 S. W., 628, 24 Ky. Law Rep., 1443, was of this character.

But the case at bar involves an injury occurring to a workman in the railroad shops and is governed by the general rule. The court should have omitted from the first instruction the word "negligently;" also the words "which prudent persons are accustomed to exercise under similar circumstances;" and for the words "by reason of such negligence" should have substituted the words "by reason of such failure." The words "so as" should also be omitted before the words "to prevent." In the second instruction the same words should be omitted so far as they occur. The definition of utmost care in the eighth instruction is incorrect, and instructions containing in effect this idea have been several times condemned by this court. McLaughlin v. Louisville Electric Light Company, 100 Ky. 173, 18 Ky. Law Rep. 693; 37 S. W. 851, 34 L. R. A. 812; Overall v. Same, 47 S. W. 442, 20 Ky. Law Rep. 759; O'Donnell v. Same, 55 S. W. 202, 21 Ky. Law Rep. 1362. By utmost care and skill as used in the instructions is meant the highest degree of care and skill known

which may be used under the same or similar circum-
stances.  In support of these views see Thompson on
Negligence, sections 797, 4036; Haynes v. Raleigh Gas
Company (N. C.) 19 S. E. 344, 26 L. R. A. 810, 41
Am. St. Rep. 786; Alexander v. Nanticoke Light
Company (Pa.) 58 Atl. 1068, 67 L. R. A. 475, and
cases cited in notes; City Electric Street Railway Co.
v. Connery, 61 Ark. 381, 33 S. W. 426, 31 L. R. A.
570, 54 Am. St. Rep. 262; Uggla v. West End Street
Railway, 160 Mass. 351, 35 N. E. 1126, 39 Am. St.
Rep. 481.  The court should also have instructed the
jury, as asked by the plaintiff, that Mangan in the
performance of his duties as an employee in the shops
of the railroad company had a right to assume, in
absence of notice to the contrary, that the trans-
former and other appliances for furnishing electricity
were in good order and free from defects.  Ramsey v.
Louisville, etc., R. R. Co., 89 Ky., 104, 12 Ky. Law
Rep., 559, 20 S. W., 162; Shearman & Redfield on
Negligence, section 92

Judgment reversed, and cause remanded for a new
trial.